EDWARD FRIEL, *Appellant, v.* LYMAN S. WOOD, ADMINISTRATOR OF THE ESTATE OF LAMBSON, DECEASED, *Respondent.*

No WIFE A WITNESS.—Section 379 of the Practice Act, excludes the wife from testifying for or against her husband, except when the action is between themselves, and when a witness is offered by a party to the suit, with the statement that "she is his plural, or second wife," such witness will be excluded, and the Court will not try the question of the validity of the marriage, or the relations of the parties.

CANNOT CHANGE POSITION IN SUPREME COURT.—A party will not be allowed to take a position in this Court different from that taken in the Court below; such practice is unjust to the Court below, and cannot be tolerated.

APPEAL from the District Court of the First Judicial District.

Suit on a promissory note made by Lambson during his lifetime. The Defendant was sued as Administrator

of the Estate of said Lambson, and filed answer, pleading payment of the same by said Lambson before his decease.

The other facts are stated in the Opinion of the Court.

*D. S. Dana*, for Appellant.

*J. B. Milner*, for Respondent.

Boreman, J., delivered the Opinion of the Court.

The Plaintiff, on the trial below, in the First District Court, in order to maintain the issue upon his part, offered as a witness, one Margaret Ann Herbal, and stated at the time, " she is the plural wife, or second wife of the Plaintiff, the first wife being now living, and residing with the Plaintiff as his wife." Defendant thereupon objected to said party being sworn as witness, and the objection being by the Court sustained, and the person excluded as a witness, the case has been brought to this Court upon that simple point.

The Territorial statute excludes the wife from testifying for or against her husband except when the action is between themselves. The exclusion applies to the lawful wife, and not to an illegal one. But is this Court to decide upon the legality or illegality of the marriage between the Plaintiff and her who is offered as a witness? By no means. The party offering her as a witness, asserts that she is his wife, and the defendant assents thereto—so far as the case goes—and asks her exclusion under the statute excluding a wife. But it is said that she is the " plural wife " or " second wife " of the Plaintiff, and that the first wife is still living with the Plaintiff as wife. The whole admission should be taken together, yet this does not change the case. Suppose she is the " plural wife " or " second wife," and that the first wife is still living with the Plaintiff as his wife, it does not follow that the Court is going to decide that the first marriage is valid and the second one void, especially when

no such case is presented.    Such a case would have pre-
sented itself to the Court below, had the Plaintiff's counsel
then and there disclaimed that said woman was the
Plaintiff's wife, but only a mistress; yet this he did not do,
but stood by his statement that she was a wife.    Shall
the Court go into the question whether this woman was
a wife or not, when no one raised such a question ?    Both
parties agree upon the point that she is a wife, but it is
a " second wife " or " plural wife " and the other still
living with Plaintiff as his wife.    The presumption is that
the first wife is the legal wife, and the second is an ille-
gal wife—a mere concubine.    Yet the first may be void
as not being between parties competent to contract, or it
may have been dissolved by decree of Court and the
parties gone to live together again.    The Court must
recognize the fact that very little respect is paid to the
marriage tie in this Territory.    And where in a civil
case the parties agree in the Court below that the witness
offered is a wife—no matter whether the first wife be
living or not, or whether the person be the plural or
second wife or not, the Court will conclude she is, so far
as the question of her admission as a witness goes, the
legal wife of the party offering her as a witness.    In the
case before us—in the Court below the woman is claimed
as wife—and now in this Court, after the opposite party
has acted upon the former admission, and after the Court
below acted upon the former admission, the Plaintiff
comes in and asks to take a new ground different from
that occupied below—and disclaim the woman as wife
and declare her to be his mistress only.    Such a " fast
and loose " practice, such jugglery, should not be allowed.
It would be unjust to the Court below for the party to
take one position in that Court and then another in this
Court, and thus succeed in changing the judgment.    He
must stand or fall by his own words at the time of offer-
ing the witness.    If the party claims the woman as wife
below, he must reap the consequences.    It was sufficient
for the Court to know that he claimed her as his wife,

and as to whether she really was his wife or not, is not the issue, the Defendant raising no question thereon.

The judgment of the Court below is affirmed.

EMERSON, J., concurred.

McKEAN, C. J., delivered the following dissenting opinion :

The Plaintiff sued the Defendant in the First District Court, on a promissory note made by Lambson during his life time. The defendant pleaded payment by Lambson before his decease. On the trial, before the Court without a jury, there was evidence tending to show such payment. The Plaintiff then called as a witness one Margaret Ann Harbel for the purpose of proving that there had been no such payment, and further to establish admissions and statements to the same end. The counsel for the plaintiff, when producing the witness, stated, as the bill of exceptions shows, that "she is the plural wife or second wife of the Plaintiff—the first wife being now living and residing with the Plaintiff as his wife." The Defendant's counsel objected to the witness being sworn. The Court sustained the objection, and excluded the witness from the stand and from being sworn. The Plaintiff's counsel duly excepted to the ruling. Judgment was rendered for the Defendant for the costs. The Plaintiff appeals.

" A husband shall not be a witness, for or against, his wife, nor a wife for or against, her husband; nor can either, during the marriage or afterwards, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to an action or proceeding by one against the other." (Utah Practice Act. sec. 379). Did the woman, Harbel, come within the prohibition of this statute, and was she therefore properly rejected as a witness ?

The Respondent's counsel cited Divoll *v.* Leadbetter, (4 Pick, 220), which was a case of trespass on the free-

hold. The Plaintiff in that case showed that about sixteen years before the trial, the bans of matrimony between the Defendant and the woman, Abigail, were published; that they had cohabited with each other for many years; that the said Abigail had had two children, of whom the Defendant was the reputed father; and that the Defendant had alleged that he had been lawfully married to her, and had exhibited a certificate of the fact in due form.

It was held that the Defendant could not avoid responsibility in that case, by claiming that the woman Abigail was his niece, and that his marriage with her was therefore void. The case did not turn on the admission or rejection of a witness ; and even if the Defendant's marriage were voidable, it could not be tolerated that he should escape responsibility by himself declaring it to be void, and that too in a collateral proceeding. It is unnecessary to inquire how the Court would have decided had the marriage been absolutely void.

Let us suppose that John Doe sues Richard Roe, and on the trial calls Mary Doe as a witness, at the same time saying, " she is my wife;" and let us suppose that the Defendant thereupon objects to her being sworn or giving testimony in the case. Now, it is clear that the Court must take the Plaintiff's statement to be true. The Defendant's objection admits it to be true, precisely as a demurrer to a complaint admits such complaint to be true. And the Court can no more go outside of the statement, and presume other or different facts, than it could go outside of a complaint and presume facts not stated therein. It follows that Mary Doe would have to be regarded as the wife, the lawful wife of of the Plaintiff, and therefore it would be the duty of the Court to reject her as a witness.

When, in the case at bar, the Plaintiff's Counsel called the woman Herbel as a witness, he said: " she is the plural wife or second wife of the Plaintiff, the first wife being now living and residing with the Plaintiff as his wife." The Defendant's Counsel objected to her being sworn.

The statement of the Plaintiff's Counsel must be taken as true. Nothing can be added to it, or taken from it, either by conjecture or presumption. What does that statement mean? Take the words : "The first wife being now living and residing with the Plaintiff as his wife." These words mean, if they mean anything, that the woman of whom they were spoken, was the lawful wife of the Plaintiff. The word "plural" means, "consisting of two or more;" "designating two or more," "any number except one." (See Webster's Dic.) Courts are bound to take notice of many facts which are neither sworn to by witnesses nor recorded in books. This Court knows, and is bound to take notice, that the practice of polygamy is taught in Utah, and that in public and in private, a polygamous woman is called a "plural wife," and that a "plural wife" is never the first wife. The statement made by the Plaintiff's Counsel was in substance and legal effect that the Plaintiff's first and lawful wife was then alive, and cohabiting with the Plaintiff, and that the woman Herbal sustained polygamous relations to the Plaintiff, and therefore was not, in law, his wife. His theory was that therefore she was a competent witness. No time will be spent in proving that a polygamous marriage is absolutely void.

"On an indictment for a second marriage during the continuance of a former marriage, though the woman first married by him cannot be a witness, yet, after proof of the first marriage, the second woman he married may be a witness, not being legally the wife of the prisoner. After such proof, she would be competent to give evidence for, as well as against the prisoner." (Phillips on Ev. Vol. II. p. 96, marg.)

"In a prosecution for polygamy the first husband or wife cannot be admitted to prove the former marriage against the prisoner." (Ibid. p. 84, marg.)

"The husband cannot be a witness against the wife, nor the wife against the husband, to prove the first marriage on an indictment for a second marriage ; * * * but in such case the second wife or husband may be a

witness, the second marriage being void." (Blackstone's Com. Chitty's 19 Ed. p. 444. note 46).

"This rule of protection is extended only to a lawful marriage, or to such as are innocent in the eye of the law. If the cohabitation is clearly of an immoral character, as for example in the case of a kept mistress, the parties are competent witnesses for and against each other. On the other hand, upon a trial for polygamy, the first marriage being proved and not controverted, the woman with whom the second marriage was had, is a competent witness ; for the second marriage is void." (I. Greenleaf's Ev., Sec. 339). "The rule that the husband and wife shall not be compelled to testify against each other, relates only to lawful marriages, or at least to such as are innocent in the eye of the law. A kept mistress is certainly not privileged, and she is a competent witness against the man by whom she is kept." (3 Bouvier's Institutes, p. 434).

The Utah statute is substantially an enactment of the rule of the common law. "On the ground of an indissoluble union of interests, and in order to prevent connubial harmony and confidence from ever being disturbed, it is a general rule of law, that neither the husband or wife can, in any case, civil or criminal, be a witness for or against the other ; an exclusion which belongs to no other of the domestic relations. This rule sometimes produces hardship, but on the whole is supposed to be salutary." (Walker's American Law, 239).

Now, it is not perceived how a polygamous woman, or plural wife, can be rejected as a witness for or against her so-called husband, save on the assumption that she is, in law, his wife. Let us see to what consequences such a doctrine might lead.

While to permit a plural wife to testify for her polygmous husband might frequently. give him an advantage in litigation, yet it is believed that the opposite doctrine would result in much greater public inconvenience and injury. It is conceivable, nay, experience and observation show, that in many actions, whether civil or

criminal, plural wives are the only witnesses by whom a case can be made out against polygamous defendants. Were the rule to be established that such witnesses are to be rejected, it is believed that it would soon be found to work great injustice; especially in this Territory where so many men and women sustain polygamous relations to each other. Indeed, it would often entirely bar the avenue to truth.

Nor are these the only weighty considerations. If a plural wife, when called as a witness for or against her polygamous husband, is to be rejected, it must be done upon the assumption that she is a wife within the meaning of the Utah statute. If, therefore, that statute required such a construction, one or two consequences must follow: Either—1st, that the statute is in that particular void; or, 2d, that polygamy is lawful in Utah. If the latter, then the Act of Congress making polygamy a penal offense, has fallen to the ground.

But the Utah statute is not void, neither does it legalize polygamy. It must be construed to exclude only lawful husbands and wives from being witnesses for or against each other, save in the cases expressly excepted by the statute.

In the case at bar, the plaintiff's first wife being alive, and residing with him as his wife, he called as a witness his plural wife, his second wife. She was rejected and judgment went against the plaintiff. The marriage of the plaintiff with this plural wife was absolutely void. She was not a wife within the meaning of the statute. She ought to have been sworn as a witness. The judgment ought therefore to be reversed, and a new trial ordered.